```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
                        CAMDEN VICINAGE
```

| | |
|---|---|
| DALIA RODRIGUEZ o/b/o I.D.W., | |
| Plaintiff, | Civil No. 19-16569 (RMB) |
| v. | **OPINION** |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal filed by Plaintiff Dalia Rodriguez ("Plaintiff") on behalf of her minor daughter, I.D.W. ("Claimant"), seeking judicial review of the denial of Claimant's application for Childhood Supplemental Security Income ("SSI") benefits.  For the reasons set forth herein, the Court will **VACATE** the decision of the Administrative Law Judge and **REMAND** for proceedings consistent with this Opinion.

I.  **PROCEDURAL HISTORY**

On April 16, 2015, Plaintiff protectively filed an application for childhood SSI benefits, on behalf of Claimant, alleging disability due to inflammatory arthritis, asthma,

narcolepsy, and cataplexy, with an onset date of April 15, 2015. The claim was initially denied on July 22, 2015, and again upon reconsideration on February 1, 2016. <u>See</u> Record of Proceedings ("R.P."), at 25. Thereafter, Claimant appeared and testified at a hearing held before the Honorable Administrative Law Judge Scott Massengill (the "ALJ") on March 28, 2018. A supplemental hearing was also held on July 18, 2018. Plaintiff and an impartial medical expert, James Bruce Burnett, M.D., also appeared and testified at both hearings. Claimant was represented by counsel, Adrienne F. Jarvis, Esq.

Following the hearings, the ALJ issued a decision on August 31, 2018, which denied the claim for Childhood SSI benefits based on a determination that Claimant did not suffer from "an impairment or combination of impairments" that result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of function. [R.P., at 41]. On June 27, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as final. [R.P., at 1-4]. Plaintiff now seeks this Court's review.

## II.  <u>STANDARD OF REVIEW</u>

When considering a social security appeal, the district court must uphold the Commissioner's decision if it is supported by substantial evidence. <u>Allen v. Bowen</u>, 881 F.2d 37, 39 (3d

Cir. 1989). Substantial evidence exists when there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). A district court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.1992)(citation omitted). Thus, a district court is bound by the findings of the ALJ that are supported by substantial evidence, "even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999)(citations omitted). To determine if such substantial evidence exists, the district court must review the record as a whole. See 5 U.S.C. § 706.

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228

F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

Under the Social Security Act, a child under 18 years old is eligible for SSI if he or she is "disabled," meaning he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child is disabled, the regulations establish a three-step sequential process. See T.C. ex rel. Z.C. v. Comm'r of Soc. Sec., 497 F. App'x 158, 160 (3d Cir. 2012)(citing 20 C.F.R. § 416.924(a)).

At step one, the ALJ considers whether the child is engaging in substantial gainful activity. Id. If so, the child is not disabled. If not, the ALJ proceeds to step two, determining whether the child has a medically determinable "severe" impairment or combination of impairments. Id. If they do not, the child is not disabled. If they do, however, the ALJ proceeds to step three. Id.

At step three, the ALJ assesses whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment set forth in 20 C.F.R. § 416.924(d). An impairment or combination of medical

4

impairments "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).  An impairment or combination of impairments "functionally equals" a listed impairment if the child has "marked" limitations in at least two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A "marked" limitation exists when it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is considered "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2).  An "extreme" limitation exists when it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is considered "more than marked" but not necessarily equivalent to "a total lack or loss of ability to function." 20 C.F.R. § 416. 926a (e)(3).

The ALJ determines the child's ability to function in each domain based on "all the relevant factors," including the effectiveness of medication on the child, the ability of the

5

child to function in school, and the effects of structured settings on the performance of the child. 20 C.F.R. § 416.926a(a)(1)-(3).  If the ALJ finds that the requirements of the third step are met, the child is considered disabled under the Social Security Act for purposes of SSI.  20 C.F.R. § 416.924(d)(1).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.  The Claimant, who was 13 years old on the alleged onset date, alleges disability based on a combination of impairments, including arthritis, asthma, allergies, migraines, narcolepsy, and cataplexy.  At the administrative hearing, Claimant testified that she has been homeschooled since the fall of 2015. [R.P., at 65].  According to Claimant and her mother, homeschooling was necessary because Claimant's medical conditions made it difficult for her to walk up and down the steps at school, she would get dizzy, drop objects, and struggle to stay awake.[1]

When performing the sequential analysis, at step one, the ALJ found that Claimant had not engaged in substantial gainful

---

[1] Although Plaintiff testified that the school district "told [her] that [Claimant] had to be homeschooled," the record does not contain any evidence that the school district "required" homeschooling.  Rather, the record indicates that school

6

activity. [R.P., at 28]. At step two, the ALJ determined that Claimant had the following severe impairments: juvenile inflammatory arthritis, migraines, gastritis, mood disorder, narcolepsy, and allergic rhinitis. [Id.] At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Commissioner's listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. [Id., at 30].

At Step four, the ALJ evaluated Claimant limitations under the six domains of functioning to determine whether her limitations functionally equaled a listing. [R.P., at 31-41]. The ALJ found that Claimant had a "marked" limitation in health and physical well-being, but no limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. [Id.]. The ALJ also found that Claimant had "less than marked" limitations in moving about and manipulating objects and in caring for herself. [Id.]. Because Claimant did not have a "marked" limitation in two

---

district simply approved Claimant's application for homeschooling at the recommendation of her physician.  As part of the school district's homeschooling plan, two teachers would visit Claimant's home for instruction.  Due to her conditions, however, she was exempt from physical education requirements.

7

domains or an "extreme" limitation in one domain, the ALJ found that her impairments did not functionally equal a listing.

## IV. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred when finding that Claimant had only a "marked" limitation, rather than an "extreme" limitation, in the domain of health and physical well-being.  In support of this argument, Plaintiff contends that the ALJ "failed to account for the child's home schooling" and the medical reasons for the homeschooling.  Plaintiff also asserts that Dr. Burnett, the medical expert, "did not understand basic Social Security law" and "his testimony was irrelevant."  Relatedly, Plaintiff argues that the ALJ relied upon the medical expert's factually incorrect statements about Claimant's alleged narcolepsy with cataplexy.

Although the Court finds that the ALJ properly considered Claimant's homeschooling and rejects Plaintiff's harsh characterization of the medical expert, the Court agrees that Dr. Burnett appears to have made confusing and possibly inaccurate statements about Claimant's alleged narcolepsy with cataplexy.  Because the ALJ gave great weight to the medical expert's testimony, including the potentially incorrect statements about narcolepsy and cataplexy, when determining that Claimant does not have an impairment that meets or medically

8

equals the severity of a listed impairment, the Court cannot conclude that ALJ's decision was based upon substantial evidence.

### A.   *Consideration of Homeschooling*

As to Plaintiff's first argument, the ALJ clearly acknowledged and considered Claimant's homeschooling, and the underlying medical reasons for homeschooling.  Indeed, Claimant's homeschooling is mentioned no fewer than nine times in the decision.  As a matter of fact, nearly an entire paragraph on page 11 of the ALJ's decision is dedicated to discussion of Claimant's homeschooling situation.  On this subject, the ALJ noted that Plaintiff has admitted that her daughter "is good at reading and math," "reads about science and history," "does not have any problems with her school work," and "has never had any difficulty in school academically." [See R.P., at 467].  Although one of Claimant's homeschool teachers noted that, at times, Claimant "has been very tired, sleepy, and rocking back and forth in pain," [R.P., at 464], her other homeschool teacher, Keith Howell, commented that she was a "magnificent student" who "excelled" and "received an A in all subjects." [R.P., at 465]. Mr. Howell even opined that Claimant

9

"has to rank in the top five of all the students" that he had taught in his twenty-three year career. [Id.].

Although the ALJ did not directly address Claimant's homeschooling in the section of the decision discussing limitations in health and physical well-being, the ALJ was not required to do so.  As explained by the Third Circuit, an ALJ's decision should be "read as a whole" and an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Furthermore, Plaintiff cites to no opinion, administrative guidance, or other evidence stating that homeschooling for medical reasons creates a de facto presumption that a child has an "extreme" limitation in the domain of health and physical well-being.  Because the ALJ clearly acknowledged and considered Claimant's homeschooling, and discussed reasons for finding less than extreme limitations, the Court will not reweigh that evidence on appeal.

### B.  *Evaluation of Narcolepsy and Cataplexy*

In finding that Claimant's severe impairments did not meet or medically equal a listed impairment, the ALJ gave "great weight" to Dr. Burnett's opinions, including that Dr. Burnett "was not convinced that the record shows cataplexy."  [R.P., at 30].  Plaintiff argues that in reaching this conclusion, the ALJ

10

improperly relied upon the medical expert's confusing, and potentially inaccurate, statements about narcolepsy and cataplexy.[2] It appears that Plaintiff's concerns are valid.

First, the medical expert incorrectly testified at the administrative hearing that he did not recall any medical evidence or diagnosis of cataplexy in Claimant's medical records. On the contrary, numerous medical records from Dr. Karen S. Carvalho, M.D., a pediatric neurologist, indicate that Claimant was, in fact, treated for "narcolepsy with cataplexy." [See, e.g., R.P., at 1857-60, 2419-22].

The ALJ, possibly misled by the medical expert, never directly addresses Dr. Carvalho's diagnosis in the decision. Instead, the ALJ merely notes that he discounted the cataplexy allegations because the "medical evidence references cataplexy based on self-report only." [R.P., at 30]. The ALJ offers no reason why the self-reporting of symptoms to a physician, in this instance, would justify discounting the cataplexy diagnosis, considering that cataplexy is "diagnosed primarily on the basis of the clinical interview with the patient." Woodcock v. Astrue, 2012 WL 4087011, at *2, n.10 (M.D. Pa. Sept. 17,

---

[2] As properly noted by the ALJ, in the Social Security Program Operations Manual System ("POMS"), DI 24580.0005, narcolepsy is not a listed impairment and "the closest listing to equate narcolepsy with is Listing 111.02, Epilepsy." The ALJ properly used this listing to evaluate Claimant's narcolepsy.

11

2012)(internal citations omitted).  Although it is possible the ALJ has credibility concerns or other reasons to doubt the veracity of self-reported symptoms, such an explanation is not set forth in the ALJ's decision.

Second, Dr. Burnett also confusingly testified that as compared to narcolepsy, "Cataplexy is a more severe condition, and that is a more severe problem.  That's a completely separate problem." [R.P., at 169](emphasis added).[3]  The Court struggles to understand how cataplexy could be a "completely separate problem," considering that narcolepsy and cataplexy are often associated with one another. See, e.g., Woodcock, 2012 WL 4087011, at *2, n.10 (Noting that "Narcolepsy is defined as recurrent, uncontrollable, brief episodes of sleep, often associated with... cataplexy")(internal citations omitted).  In fact, the POMS guidance for evaluation of narcolepsy even specifies that, by definition, narcolepsy "is a chronic neurological disorder characterized by recurrent periods of an irresistible urge to sleep accompanied by three accessory events," which are listed as (1) cataplexy, (2) hypnagogic hallucinations, and (3) sleep paralysis.[4]  The POM guidance

---

[3] Dr. Burnett also stated that "the Claimant doesn't necessarily have cataplexy.  It was narcolepsy.  That's two different diagnoses."  [R.P., at 169].

[4] Available at: http://policy.ssa.gov/poms.nsf/lnx/0424580005 (Accessed on August 31, 2020).

12

further states that cataplexy "is observed in 70 percent of all cases" of narcolepsy.

Based upon Dr. Carvalho's medical reports, the POMS guidance, and other evidence in the record discussing the relationship between narcolepsy and cataplexy, it is evident that the medical expert's statements were misleading, and possibly factually incorrect.  Because the ALJ explicitly relied upon the medical expert's confusing and contradictory statements in concluding that Claimant's narcolepsy did not medically equal a listed impairment, the Court cannot decipher whether that conclusion was supported by substantial evidence.  As such, the ALJ must further develop the record and provide additional explanation and analysis in relation to this issue.  Accordingly, the Court is constrained to remand.

**V.     CONCLUSION**

For the aforementioned reasons, and because the ALJ's decision lacks any independent analysis or credibility explanations for rejecting Dr. Carvalho's diagnosis, the Court cannot determine at this stage whether the Commissioner's decision is supported by substantial evidence. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)(holding "to the extent that the ALJ reaches a finding contradictory to that of [the claimant's] treating physicians, he must explain the reasoning

13

behind such a finding"). Although there may be facts in the record to support the ALJ's conclusions, the Court is unable to determine the basis for the ALJ's denial without a more detailed discussion of the reasoning behind that decision.  Thus, the Court will remand for further proceedings. An appropriate order shall issue on this date.

DATED: August 31, 2020

                                           s/Renée Marie Bumb
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT JUDGE